# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

LORI SCHWEER,

        Plaintiff,

v.

HOVG, LLC, et al.,

        Defendants.

CIVIL ACTION NO. 3:16-CV-01528

(MEHALCHICK, M.J.)

## MEMORANDUM

A ruling upon the present dueling motions for summary judgment requires an answer to the question of when are words in a letter from a debt collector deceptive enough to cause injury to a plaintiff, rather than bare violation of federal statute. Particularly, this dispute between the parties hinges upon whether a Defendant's encouragement of a debtor to call to dispute a debt was deceptive in light of the Third Circuit's requirement that objections to a debt be made in writing. For the reasons set forth below, Defendants' motion for summary judgment will be denied in its entirety, and Plaintiff's cross motion for summary judgment granted.

## I. BACKGROUND

On August 28, 2015, Defendant HOVG, LLC, a collection agency acting on behalf of Defendant Pendrick Capital Partners, LLC, mailed a letter to the Plaintiff, Lori Schweer. (Doc. 1-1, at 8). HOVG, identified in the letter as Bay Area Credit Service, advised Schweer that it was attempting to collect a debt owed to Pendrick Capital Partners, LLC ("Pendrick") after Pendrick purchased Schweer's debt owed to "Broad Mountain Emerg Phys PLLC." (Doc. 1-1, at 8). The letter further advised that Schweer should contact HOVG at the telephone number provided should she have any questions, was unable to pay the balance in full, or if Schweer

disputed the debt. (Doc. 1-1, at 8). At the bottom of the letter, HOVG directed Schweer to "see reverse side for important consumer information." (Doc. 1-1, at 8). On the reverse side under a heading of "consumer rights," the letter contained a statement reading:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of the judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor if different from the current creditor.

(Doc. 1-1, at 9).

## II. PROCEDURAL HISTORY

On June 22, 2016, Schweer filed suit against HOVG and Pendrick in the Court of Common Pleas of Lackawanna County, alleging the letter violated multiple provisions of the Fair Debt Collection Practices Act ("FDCPA"). (Doc. 1-1, at 3). In her complaint, Schweer states that the language of the letter advising her to call in order to dispute any debt owed violated 15 U.S.C. § 1692g and Third Circuit case law requiring disputes to be made in writing. (Doc. 1-1, at 4-5). *See Graziano v. Harrison*, 950 F.2d 107, 112 (3d Cir. 1991). She further states that HOVG's letter violated 15 U.S.C. § 1692e(14) for a failure to use its true name when collecting a debt by using the name "Bay Area Credit Service" instead of "Bay Area Credit Service, LLC." (Doc. 1-1, at 5). Defendants were served on July 5, 2016, and on August 3rd removed the case to the Middle District, stating this Court has original jurisdiction over FDCPA actions. (Doc. 1, at 1-2). On August 10, 2016, the Defendants filed their answer to Schweer's complaint. (Doc. 2).

On August 23, 2016, the parties filed the joint case management plan, wherein the Court was advised that Schweer had withdrawn her challenge to the use of the "Bay Area Credit Service" moniker and would proceed only on the claim predicated upon the deceptive language encouraging her to call to dispute the debt. (Doc. 8; Doc. 9). The parties consented to proceed before the undersigned on March 2, 2017, with both parties filing their respective motions for summary judgment that same day.

In their motion for summary judgment and brief in support, Defendants argue first that, to the extent the language violated the FDCPA, Schweer does not have standing to bring suit as she has not suffered any injury. (Doc. 33; Doc. 37). They argue that Schweer has never challenged the validity of the debt by phone or in writing and therefore could not have been deceived by the language in the letter. (Doc. 33). Second, the Defendants argue that Pendrick should be dismissed from the action, as they have never contacted Schweer in attempting to collect the debt since assigning it to HOVG, and should not be held liable for the language contained in HOVG's collection attempts. (Doc. 33). In her brief in opposition, Schweer countered that intangible harm may still satisfy the injury in fact requirement for standing. (Doc. 40, at 3). She further argued that the purpose of the FDCPA is to protect consumers, and that "deprivation of legally required information can be sufficient to confer standing." (Doc. 40, at 8-9).

In her counter motion for summary judgment and in support, Schweer argues that the language in HOVG's letter clearly overshadowed the notice requirements of the FDCPA and, under the least sophisticated debtor standard, Schweer is entitled to statutory damages for this breach. (Doc. 35; Doc. 38). The Defendants' brief in opposition reiterates that Schweer has alleged "no more than a hypothetical, procedural violation of a federal statute without any

showing the alleged violation caused Plaintiff harm or any material risk of harm." (Doc. 41, at 12).

On June 12, 2017, the Supreme Court issued an opinion in *Henson v. Santander Consumer USA Inc.*, 137 S.Ct. 1718 (2017), where the Court resolved a split between Courts of Appeals on whether purchasers of delinquent accounts, who then attempt to collect the defaulted debts, are considered debt collectors under the FDCPA. The Court ruled that Congress did not intend for debt buyers to be considered debt collectors for the purposes of the Act, where the debt buyer attempted to collect debts for which the debt buyer now owned. *Henson*, 137 S.Ct. at 1724.

As a ruling upon the instant motions for summary judgment requires a finding that Pendrick qualifies as a debt collector for the purposes of the FDCPA, this Court ordered supplemental briefing on the applicability of *Henson* on June 22, 2017. (Doc. 48). On June 29, 2017, both parties filed their briefs in accordance with this Court's Order. The Defendants argue that the ruling in *Henson* specifically encapsulates Pendrick, shielding them from liability for the actions of HOVG. (Doc. 49). Schweer argues that the FDCPA provides two definitions of a debt collector. (Doc. 50). She states that while *Henson* addressed the second scenario—a debt buyer attempting to collect a debt it owns—that the Supreme Court did not address the other enumerated circumstance in 1692a(6): "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts[.]" (Doc. 50).

Both motions having been fully briefed, they are now ripe for resolution.

**III.    STANDARD OF REVIEW**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). In making this determination, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### IV. DISCUSSION

Three distinct issues arise upon consideration of the parties' motions for summary judgment. The first, raised by the Defendants, challenges Schweer's standing to bring suit. Second, the Defendants argue that even if Schweer does have standing that Pendrick should be

dismissed as the actions causing the instant lawsuit are solely attributable to HOVG. Lastly, Schweer argues that no material fact exists disputing a breach of the FDCPA by the Defendants, and she is entitled to summary judgment on her claim.

A. SCHWEER HAS STANDING TO BRING SUIT UNDER THE FDCPA

In order to establish standing to bring suit, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016) (citing *Lujan*, 504 U.S. at 560-61). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S.Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). For the injury to be "concrete," it must be "real," and not "abstract"; however it need not be traditionally "tangible" in the sense of personal injury or economic harm. *Spokeo*, 136 S.Ct. at 1548-49. "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Spokeo*, 136 S.Ct. at 1548 (internal quotations omitted).

Even a *de facto* violation of the FDCPA confers Article III standing upon an aggrieved debtor. "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Spokeo*, 136 S.Ct. at 1549. An injury-in-fact "may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982) (citing *Warth v. Seldin*, 422 U.S. 490, 500 (1975)). The FDCPA allows a debtor to pursue damages from "any debt collector who fails to comply with any provision of this subchapter" without alleging harm beyond that outlined by the Act. 15 U.S.C. § 1692k(a). *See In re Horizon Healthcare Serv's Inc.*

*Data Breach Lit.*, 846 F.3d 625, 640 n. 24 (3d Cir. 2017) (*de facto* injury of debtor for debt collector violation of FDCPA satisfies Article III standing requirement); *Church v. Accretive Health, Inc.*, 654 F.App'x 990, 994 (11th Cir. 2016) ("The FDCPA authorizes an aggrieved debtor to file suit for a debt collector's failure to comply with the Act."); *Reed v. IC System, Inc.*, No. 3:15-279, 2017 WL 89047, *3 (W.D. Pa. Jan. 10, 2017) ("When someone is subjected to . . . practices [in violation of the FDCPA], she has suffered a concrete injury and need not allege[] any additional harm beyond the one Congress has identified.") (internal quotations omitted); *Hartman v. Medicredit, Inc.*, No. 15-1596, 2016 WL 7669858, *3 (W.D. Pa. Dec. 20, 2016) ("Plantiff has a statutory right to be free from [unfair practices identified by the FDCPA] and the alleged violation of that right constitutes a concrete injury" conferring standing.); *Sullivan v. Allied Interstate, LLC*, No. 16-203, 2016 WL 7187507, *5 (W.D. Pa. Oct. 18, 2016) ("[A] defendant who violates a plaintiff's rights under the FDCPA inflicts an actual, concrete harm for Article III standing purposes.") (internal quotations omitted).

Schweer's suit centers upon the provisions outlined in § 1692g, the requirements of which she argues were overshadowed by the language of the letter sent to her. Congress' intent in creating the FDCPA was to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). By providing relief to a debtor for any violation of the statute, Congress demonstrated its intent to shield debtors from abusive and deceptive practices under the Act. *See* 15 U.S.C. § 1692k. Schweer's allegation of debt collection practices in violation of § 1692g of the FDCPA therefore are sufficient to confer standing, even

absent allegations of harm in excess of the statutory provisions. Thus, the Defendants' motion for summary judgment on grounds that Schweer does not have standing are **DENIED**.

## B. DEFENDANT PENDRICK SHOULD NOT BE DISMISSED

Next, the Defendants argue that Pendrick should be dismissed from the action, as Schweer "cannot point to any affirmative act by Pendrick that violated the FDCPA." (Doc. 37, at 3). Specifically, "Pendrick did not prepare or assist in the preparation of the letter[,] . . . has never communicated directly with Plaintiff[, . . . or] attempted to collect the debt from Plaintiff directly." (Doc. 37, at 9-10). Schweer responds that Pendrick hired HOVG to collect the debt on Pendrick's behalf and, as Pendrick is also debt collector for the purposes of the FDCPA,[1] Pendrick is vicariously liable for the actions of HOVG. (Doc. 40, at 14-15).

The mere fact that Pendrick did not undertake or participate in independent collection actions does not shield it from liability, as vicarious liability may extend to a defendant for the actions of a party hired to collect a debt on the defendant's behalf. Indeed, the Third Circuit has found that where a debt buyer retains a debt collector to collect a consumer account, the former may be responsible for the FDCPA violations of the latter. *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 405 (3d Cir. 2000).

In *Pollice*, the Third Circuit explained that liability would only extend where the debt buyer was also considered a debt collector for the purposes of the FDCPA and upon consideration of how the debt was acquired. *Pollice*, 225 F.3d at 404-05. On the latter of these

---

[1] The parties stipulated that Pendrick is indeed a debt collector for the purposes of the FDCPA. (Doc. 9, ¶ 2).

considerations, the Third Circuit differentiated between debt collectors attempting to collect a debt obtained while in default from another as opposed to a debt for which the debt collector may be considered a creditor. *See Pollice*, 225 F.3d at 404. "[O]ne attempting to collect a debt is a debt collector under the FDCPA if the debt in question was in default when acquired. Conversely, where the debt collector is the original creditor for the debt or obtains a debt from another prior to default, vicarious liability may not extend. *See Pollice*, 225 F.3d at 403-05. *See also Barbato v. Greystone Alliance, LLC*, No. 3:13-CV-2748, 2017 WL 1193731, *7-9 (M.D. Pa. March 30, 2017).

In the letter from HOVG to Schweer, HOVG advised that their client, Pendrick Capital Partners, LLC, "has purchased your account from BROAD MOUNTAIN EMERG PHYS PLLC and has assigned it to this collection agency." (Doc. 1-1, at 8). The letter does not identify the status of Schweer's account with Broad Mountain at the time of purchase, including when the account was purchased and when it went into default. A review of the pleadings and exhibits does not resolve this question. The evidence closest to resolving this issue comes from the joint case management plan, where the parties agree that Pendrick's "principal purpose of business . . . is to buy defaulted debts and thereafter attempt to collect those debts." (Doc. 8, at 3-4). While this does not inherently resolve the nature of this particular debt, the stipulation does fit squarely with the definition of a debt collector as defined in the FDCPA.

Under the FDCPA, a debt collector is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692(a)(6). In *Henson v. Santander Consumer USA Inc.*, 137 S.Ct. 1718 (2017), the Supreme Court specifically

addressed only whether or not the defendant could be found a debt collector when attempting to collect debts owed to itself as opposed to "another." *Henson*, 137 S.Ct. at 1721. In holding that they could not, the *Henson* Court appears to address circumstances similar to this one, where Pendrick, as owner of the debt, and regardless of the origins of the debt, cannot be considered a debt collector under the Act for attempting to collect a debt that they own. But the *Henson* Court also made clear that its holding in that matter was narrow, and did not address the applicability of "in any business the principal purpose of which is the collection of any debts[.]"*Henson*, 137 S.Ct. at 1721.[2]

It is that unaddressed language that Schweer asks the Court to apply to Pendrick now. As stipulated in the joint case management plan, Pendrick's principal purpose of business "is to buy defaulted debts and thereafter attempt to collect those debts." (Doc. 8, at 4). The Defendants stipulated specifically that Pendrick is indeed a debt collector for the purposes of the Act. (Doc. 9, ¶ 2). Thus, the Court finds that *Henson* does not shield Pendrick from liability, as Pendrick fits in the remainder of the definition of a debt collector unaddressed by *Henson*. Under this definition of debt collector, the unresolved question on the status of the debt at the time of obtaining ownership is irrelevant. Accordingly, Pendrick should not be dismissed from the present action, as it remains a debt collector as defined in the FDCPA. As Pendrick remains a debt collector, *Pollice* remains relevant, as liability may extend due to the actions of a debt

---

[2] Prior to the Supreme Court granting *certiorari*, the Fourth Circuit disposed of the applicability of that language to Santander, as the plaintiffs did not allege that Santander's principal business was to collect debts. *Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 137 (4th Cir. 2016).

collector hired by Pendrick in order to collect debts owed. The Defendants' motion for summary judgment to dismiss Pendrick is hereby **DENIED**.

### C. THE LANGUAGE OF THE LETTER OVERSHADOWED THE MANDATORY DISCLOSURE REQUIREMENTS OF THE FDCPA

Turning to the merits of Schweer's complaint and cross-motion for summary judgment, Schweer argues that the "please call" language in the letter sent by HOVG overshadows the mandatory disclosure requirements of the FDCPA, which mandate that disputes to a debt must be made in writing to be effective. (Doc. 38, at 3). Congress enacted the debt validation provision of § 1692g "to guarantee that consumers would receive adequate notice of their rights under the law." *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000) (citing *Miller v. Payco-Gen. Am. Credits, Inc.*, 943 F.2d 482, 484 (4th Cir. 1991)). Under § 1692g:

> [w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--
> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).

The statute goes on to state that:

> [i]f the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is

disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

15 U.S.C. § 1692g(b).

"[I]n order to comply with the requirements of § 1692g, more is required than the mere inclusion of the statutory debt validation notice in the debt collection letter-the required notice must also be conveyed effectively to the debtor." *Wilson*, 225 F.3d at 354 (citations omitted). "Moreover, the validation notice required by the Act is to be interpreted from the perspective of the least sophisticated debtor." *Wilson*, 225 F.3d at 354 (internal quotations omitted).

"The basic purpose of the least-sophisticated [debtor] standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd. This standard is consistent with the norms that courts have traditionally applied in consumer-protection law.'" *Caprio v. Healthcare Revenue Recovery Group, LLC.*, 709 F.3d 142, 149 (3d Cir. 2013) (quoting *Lesher,* 650 F.3d 993, 997 (3d Cir. 2011)). The least sophisticated debtor standard is lower than simply examining whether particular language would deceive or mislead a debtor. *Caprio*, 709 F.3d at 149 (citing *Wilson*, 225 F.3d at 354). This standard is "less demanding than one that inquires whether a particular communication would mislead or deceive a reasonable debtor" but "does not go so far as to provie solace to the willfully blind or non-observant." *Caprio*, 709 F.3d at 149 (quoting *Campuzano-Burgos v. Midland Mgmt., Inc.*, 550 F.3d 294, 298-99 (3d Cir. 2008)). A

debtor "is still held to a quotient of reasonableness, a basic level of understanding, and a willingness to read with care, and the debt collector accordingly cannot be held liable for bizarre or idiosyncratic interpretations." *Caprio*, 709 F.3d at 149 (citing *Wilson*, 225, F.3d at 354-55). Even the least sophisticated debtor is expected to read any notice in its entirety. *Caprio*, 709 F.3d at 149 (citing *Lesher*, 650 F.3d at 997).

A validation notice is overshadowed or contradictory if it would make the least sophisticated consumer uncertain as to their rights. *Caprio*, 709 F.3d at 149 (citing *Wilson*, 225 F.3d at 354). As noted by *Wilson*, a collection letter is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate. *See Caprio*, 709 F.3d at 149 (citing *Wilson*, 225 F.3d at 354). Courts analyze both the substance and the form of a collection letter in determining whether the language in the letter contradicts or overshadows the required validation notice. *Hishmeh v. Cabot Collection System, L.L.C.*, No. 13-4795, 2014 WL 460768, *5 (E.D. Pa. Feb. 5, 2014) (citing *Caprio*, 709 F.3d at 151). Whether language in a collection letter violates the FDCPA is a question of law. *Szczurek v. Prof. Mgmt. Inc.*, 627 F.App'x 57, 60 (3d Cir. 2015) (citing *Wilson*, 225 F.3d at 353 n.2)).

Schweer states that *Caprio* is indistinguishable and constitutes binding precedent for this Court to follow in the instant matter. (Doc. 38, at 3). In *Caprio*, a debt collector mailed a collection letter to a debtor attempting to collect a debt. *Caprio*, 709 F.3d at 145. The front of the one-page, double-sided letter stated:

> The health care provider(s) listed below, recently hired Healthcare Revenue Recovery Group, LLC (HRRG) to collect the balance on this account. Our client's records show you as the person responsible for payment of the charges for **PHYSICIAN SERVICES.**
>
> If we can answer any questions, or if you feel you do not owe this amount, **please call** us toll free at **800–984–9115** or write us at the above address.

> This is an attempt to collect a debt. Any information obtained will be used for that purpose. (NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.)
>
> You may send payment in full. Just fill in your credit card information on the reverse, or enclose your check/money order **payable to the creditor** along with the payment voucher below. The reply envelope provided needs no postage. Unless specified, your payment will be applied to the oldest balance first.
>
> We hope to have your full cooperation in this collection matter.
>
> *Caprio*, 709 F.3d at 145.

On the reverse side, the letter read:

> This is an attempt to collect a debt from a debt collection agency.
>
> Any information obtained will be used for that purpose.
>
> Pursuant to Sec. 809 of the Fair Debt Collection Practices Act, unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will: obtain verification of the debt or obtain a copy of a judgement [sic] and mail you a copy of such judgement [sic] or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.
>
> *Caprio*, 709 F.3d at 146.

The plaintiff, in a class action, alleged the letter violated § 1692g, as "the least sophisticated debtor would believe that he should choose either" to call the number provided *or* to write the debt collector to dispute the validity of the debt. *Caprio*, 709 F.3d at 146. The plaintiff stated the language misrepresented to the debtor their rights to dispute the alleged debt, which must be done in writing in order to be effective in this Circuit. *Caprio*, 709 F.3d at 146. The Defendant moved for summary judgment, which the District Court for the District of New Jersey granted.

On appeal, the Third Circuit Court of Appeals found that the substance and form of the collection letter overshadowed and contradicted the validation notice. *Caprio*, 709 F.3d at 151. Applying the least sophisticated debtor standard, the Court found that the substance of the letter encouraged the debtor to call or write in order to dispute the debt, rejecting the District Court's "more appropriate reading," which focused on a debtor's obligation to read the letter in its entirety and would have included reading the rights outlined in the validation notice on the back. *Caprio*, 709 F.3d at 151. As to form, the Court of Appeals found that more attention was drawn to the "deficient alternative" of calling to dispute the debt, as evidenced by the bolding of "please call" and the phone number, while "write us at the above address" and the validation notice were unaltered. *Caprio*, 709 F.3d at 151-52. Further, the validation notice was relegated to the reverse side of the letter, while "please call" was prominently displayed on the front. The Court reasoned that "it appears more likely that the least sophisticated debtor would take the easier—but legally ineffective—alternative of making a toll-free telephone call to dispute the debt instead of going to the trouble of drafting and then mailing a written dispute." *Caprio*, 709 F.3d at 152. The Court concluded that the letter was deceptive because "it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Caprio*, 709 F.3d at 152.

Many of the characteristics of the collection letter in *Caprio* are found in the collection letter sent to Schweer. In the letter, under the heading "ACCOUNT NOTIFICATION," the letter read:

> Our client, Pendrick Capital Partners LLC, has purchased your account from BROAD MOUNTAIN EMERG PHYS PLLC and has assigned it to this collection agency.

> We would like to assist you in resolving this debt. Please contact our office at 866-353-7307 should you have any questions or if you are unable to pay the balance in full at this time.
>
> Payment in full may be mailed to:
> BAY AREA CREDIT SERVICE
> P.O. Box 467660
> ATLANTA GA 31146
>
> or you may pay online at www.bayareacredit.com/pay
>
> Sincerely,
>
> Bay Area Credit Service 1000 Abernathy Rd NE, Suite 195, Atlanta, GA 30326
>
> THIS IS AN ATTEMPT TO COLLECT A DEBT BY A DEBT COLLECTOR AND ANY INFORMATION WE OBTAIN WILL BE USED FOR THAT PURPOSE.
>
> If you have a dispute, this is not your debt or you have any other issues, please go online to: www.bayareacredit.com/compliance or call us at 866-363-7307 for immediate customer service.
>
> SEE REVERSE SIDE FOR IMPORTANT CONSUMER INFORMATION

(Doc. 1-1, at 8).

On the reverse side, the letter contained the validation notice, which read:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of the judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor if different from the current creditor.

(Doc. 1-1, at 9).

Like in *Caprio*, the reference to the validation notice ("important information" in *Caprio* and "important consumer information" in the instant case) is contained in the same area of text

as language encouraging the debtor to call the debt collector if they "do not feel [they] owe this amount" or "have a dispute." In both cases the validation notice on the back contains the only reference to writing the debt collector in order to obtain verification of the debt. In both cases, debtors were encouraged to call the debt collector should they dispute the debt. By contrast, the notice in *Caprio* at least made reference to the ability to write the debt collector if the debtor did not feel that they owed the debt ("if you feel you do not owe this amount, **please call** us toll free at **800–984–9115** or write us at the above address."). *Caprio,* 709 F.3d at 150. This notice, deemed deceptive by the Third Circuit, goes farther toward providing properly valid debt dispute procedures than the notice provided by HOVG, which advises only to call or go online should a debtor dispute a debt.

No reference to writing is provided aside from the validation notice in the HOVG collection letter or to remit payment. The provision for disputing debts references only calling or going online. (Doc. 1-1, at 8). Much like the Third Circuit reasoned in *Caprio*, a debtor who disputes the validity of a debt could reasonably interpret the "please go online . . . or call us" language as an effective means of disputing a debt.

On form, HOVG's collection letter does not appear to draw attention to any method of effective dispute over another, aside from the content issues addressed above. The letter does not bolden the only reference to the validation notice, nor the please call language as the letter in *Caprio* did. However, the contents of the letter in this case are enough to deceive the least sophisticated debtor, independent of the form presented.

Accordingly, for the reasons above, the Court finds that the collection letter sent by HOVG contained language overshadowing the notice requirements of the FDCPA. As such,

summary judgment in favor of Schweer is appropriate and her cross motion for summary judgment is **GRANTED**.

An appropriate Order follows.

Dated: July 7, 2017

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**